**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**

**BECKLEY DIVISION**

COUNTY OF WYOMING,
WEST VIRGINIA,

Plaintiff,

v.                                    CIVIL ACTION NO.   5:12-cv-01465

U.S. BANK NATIONAL ASSOCIATION,
N.A., et al.,

Defendants.

**MEMORANDUM OPINION AND REMAND ORDER**

The Court has reviewed Plaintiff's *Motion to Remand* ("Pl.'s Mot.") (Document 6).   After careful consideration of the complaint and the written submissions of the parties, the Court finds that this action should be remanded to the Wyoming County Circuit Court.

*I.      FACTUAL BACKGROUND & PROCEDURAL HISTORY*

On March 27, 2012, Plaintiff, County of Wyoming, West Virginia, on behalf of itself and other similarly situated West Virginia Counties, filed this action in the Circuit Court of Wyoming County, West Virginia, against Defendants U.S. Bank N.A. ("U.S. Bank"), Bank of New York Mellon ("BONY"), Bank of America, N.A. ("BofA"), Deutsche Bank ("Deutsche") and J.P. Morgan Chase & Co. ("JPM") and John Does 1-20.   (Notice of Removal, Ex. A, Complaint ("Compl.") (Document 1-1) at 2).[1]   All identified Defendants are corporations or national banking

---

[1]    The Court observes that Plaintiff includes in the opening lines of its pleading that Plaintiff initiates this action against "LaSalle."   (Compl. at 2.)   No further description of this entity, person or business organization is included in the pleading.   The Court further observes that Plaintiff has not listed "LaSalle" as a party defendant in the section of

associations with their principal places of business or main offices located outside of West Virginia. (Compl. ¶¶ 6-10.)   The County of Wyoming alleges that Defendants have participated in a scheme to deprive it, and other similarly situated Counties in West Virginia, from recordation fees that would be derived from mortgage assignments.   Plaintiff avers that W. Va. Code § 59-1-10(a)(1) sets forth the fee for recording assignments in West Virginia and that the current fee is $15 for the conveyance of real property.   (Compl. § 20.)

Defendants are trustees for a number of residential mortgage backed security trusts or RMBS trusts which "purportedly" hold deeds of trust or mortgage loans that have been securitized and included in the Mortgage Electronic Registration Systems, Inc. ("MERS") computer database.[2]   According to Plaintiff, "[s]ecuritization is a financing method in which securities are issued against a dedicated cash flow stream of mortgage payments."   (Compl. § 21.)   This process is initiated by a financial institution lending money to a mortgage borrower (or originating a loan).   Once the loan is complete, the financial institution, known as a sponsor, bundles together a group of mortgage loans that it originated (or purchased) and sells them to a "special-purpose subsidiary" or depositor and this depositor then sells the bundled loans to a RMBS trust. (Compl. § 23.)   These trusts are created and governed by a "Pooling and Servicing Agreement ("PSA") to

---

its pleading which specifically denotes the parties to this action.   Consequently, the Court has not considered LaSalle as a party relevant to the pending motions.

2    Plaintiff alleges that MERS, a non-party to this civil action: (1) is a subsidiary of MERSCORP, which is incorporated in Delaware and has its principal place of business in Virginia; (2) was created in the mid-1990s "to allow financial institutions, including the Defendants to evade county recording fees and avoid the need to publicly record mortgage transfers" (Compl. § 36); (3) maintains a computer database that is designed to track the ownership rights and servicing of mortgage loans in the United States; has no employees, but over 5,000 member institutions and 20,000 certifying officers; and (4) houses the registration of over 31 million active loans in its system.   (Compl. §§ 36-40.)   Plaintiff also alleges that "MERS' avoidance of filing mortgage / [Deeds of Trust] assignments has resulted "in the loss of millions of dollars to county governments and taxpayers from the collection of recordation fees, which fees are allocated to maintain the county recorders' records as well as fund other county services[.]"   (Compl. § 37.) Plaintiff alleges that MERS has been poorly maintained and fails to ensure that its "members update its system when note transfers occur[.]"   (Compl. § 42.)

ensure that all rights to the mortgage loans are transferred to the trustee from the depositor so that in the event of a default no other entity in the chain of title can claim control of the collateral securing the mortgage loan.[3]   Plaintiff alleges that the PSA is usually boilerplate and generally includes that the conveyance to the Trustee is as to "all the right[s], title and interest of the Depositor in and to the assets of the Trust Fund."   (Compl. § 28.) (quoting a PSA for non-defendant Merrill Lynch First Franklin Mortgage Loan Trust, Mortgage Loan Asset-Backed Certificates, Series 2007-2, at Section 2.01.)   The PSA also includes provisions relative to the requirements for first priority security interests, the documents supporting each mortgage loan, and how the trustee will acknowledge its acceptance of assignment of these loans.   Plaintiff alleges that despite the conveyance of the mortgage loans to the RMBS trust, the individual mortgages "remain listed in county recorders of deeds offices in the name of the originating lenders of the mortgage loans and have not been assigned to the trusts." (Compl. § 30.)   Plaintiff further alleges that Defendants "would have needed to record, or cause to be recorded, all [Deeds of Trust] assignments from originating lenders to the depositors to the trusts, and to pay the accompanying recording fees" in order to "transfer[] *all rights* to the mortgage free and clear of any encumbrance, . . . to have priority and lawfully enjoy the benefits of proper securitization[.]" (*Id.*)   Plaintiff alleges that Defendants have failed to "record [Deeds of Trust] assignments and pay the accompanying fees to Plaintiff [and other similarly situated West Virginia counties] for all notes in the trusts attached to all [Deeds of Trust] filed with the Wyoming County Clerk [and in the county recording offices of similarly situated West Virginia counties.]"   (Compl. §§ 33-34.)   As

---

3    If the RMBS trust qualifies under the applicable tax law as a real estate mortgage investment conduit ("REMIC") it will be treated as a "pass-through" entity for federal tax purposes, whereby the investment vehicle's investors are only taxed once for any distributions made by the trust.   (Compl. §§ 21-29.)

3

a result, Plaintiff alleges that the originating lender maintains the legal title to the Deed of Trust, priority and right to foreclose.   (Compl. § 31.)

Plaintiff also alleges that Defendants utilized MERS to "circumvent county recording fees."   (Compl. § 41.)   In support of this allegation, Plaintiff explains that when a loan is originated, the lender takes possession of the note to become the noteholder, but the lender and the borrower designate MERS as the lender's Nominee and the Beneficiary under the deed of trust. This deed of trust is allegedly recorded and the secured interest of the lender (and its successors and assigns) is now held in MERS.   Plaintiff further explains that if a debtor defaults on the loan, MERS, as the deed of trust beneficiary, will authorize the foreclosure of the home and the loan information from the deed of trust will be registered by the MERS member financial institution on the MERS system.   Plaintiff alleges that when this loan is sold through the securitization process, "the note is transferred from the original lender by an endorsement and delivery and MERS members are allegedly required to update the MERS system to reflect the change in ownership. . . . [S]o long as the note has been transferred to a MERS member, the transaction allegedly does not need to be recorded because under the terms of the mortgage, MERS remains the original Mortgagee/Beneficiary, as the Nominee for the new beneficial owner of the note (the original lender's successor and/or assign.)"   (Compl. § 41.)    Plaintiff also alleges that because the deeds of trust list MERS as a Nominee, any directions concerning the legal title of the mortgage must come from the originating lender and not the trusts which possess the mortgage note. This allegedly "depriv[es] the trust of the critical right to enforce the note through foreclosure proceedings." (Compl. at 48.)   Plaintiff avers that given the limited agency of MERS as to the originating lender, the original lender must grant MERS the authority to assign the Deeds of Trust,

4

according to the noteholder's instruction.  According to Plaintiff, since this transaction would involve the assignment of real estate interests, this agency relationship must be committed to writing to satisfy West Virginia's Statute of Fraud,[but] [n]o such writings exist."   (Compl. § 50.)

As a result of the foregoing situations, Plaintiff alleges that the RMBS trusts "lack[] the power to foreclose for all notes it holds in which the associated [Deeds of Trust] list an originating lender and MERS as nominee because the notes and [Deeds of Trust] have been severed . . . render[ing] the note [an] unsecured debt."   (Compl. § 54.)   However, Plaintiff "believes the Defendants . . . relied on the real property recording systems of the Counties to execute foreclosures on non-performing mortgages without fully compensating the Counties for that benefit."  (Id.)   Plaintiff alleges that foreclosures initiated by Defendant Trustees, "either in MERS' name when MERS lacked standing to initiate foreclosures, or where MERS lacked the authority to assign [Deeds of Trust] to the trust for the trust to initiate the foreclosures" have caused it and other counties to "suffer[] drastic consequences because such foreclosures from "fraudulent assignments from MERS" means that the property may lack clear title which impacts the value of the property, its salability, and neighboring property values. (Compl. § 60.)

As a result, in the governing pleading, Plaintiff requests that the Court certify this civil action as a class action of

> "all West Virginia counties with [Deeds of Trust] filed in their County Clerk or Recorder of Deeds Office that are allegedly attached to notes deposited in RMBS trusts administered by the Defendants as Trustees, and that lack recorded [Deeds of Trust] assignments from the originating lender to the depositor to the trust at the time of the trusts creation."

(Compl. § 61.)   Additionally, Plaintiff asserts three causes of action against Defendants: (1) unjust enrichment; (2) declaratory judgment that the notes held in the RMBS trusts are unsecured

debt, and (3) declaratory judgment that "MERS and Defendant administered trusts receiving assignments from MERS, did not have legal right to initiate foreclosures for notes in RMBS trusts administered by Defendants as Trustees[]" and a mandatory injunction "requiring that the Defendants record all prior assignments from the originating lender to the depositor to the trust, and pay the associated recording fees, in order to clear title to properties in the Counties." (Compl. §§ 65-91.)   In the various prayers for relief, Plaintiff seeks compensatory damages, restitution and disgorgement of all monies due and owing to Plaintiff and the purported class, the requested declarations and injunction, pre-judgment interest, attorneys' costs and fees and exemplary damages. (Compl. at 28.)

On May 9, 2012, Defendant U.S. Bank removed this action to this Court pursuant to 28 U.S.C. §§ 1441 and 1446 by invoking this Court's diversity jurisdiction. (Notice of Removal ("Notice") (Document 1) at 3.)   In several emails attached to the Notice, the balance of the named Defendants consented to the removal of this action.   (Notice of Removal, Ex. D, (Document 1-4) at 1-4.)   U.S. Bank asserts that Plaintiff is a citizen of the State of West Virginia and that the amount in controversy can be satisfied by several independent grounds.   In its Notice of Removal, U.S. Bank asserts that the requisite jurisdictional amount can be met due to Plaintiff's request for: (1) a declaration that any note deposited into the RMBS trust be declared an unsecured debt; (2) exemplary damages; (3) attorney's fees, and (4) actual damages of recording fees that should have been paid for certain mortgage assignments. (Notice at 7-8.)   The record reveals that U.S. Bank removed this action within thirty days of receipt of service of a copy of the government pleading as required by 28 U.S.C. § 1446(b). (Notice at 3.)

Plaintiffs timely filed their motion to remand on June 30, 2012, pursuant to 28 U.S.C. §

1447(c) to assert that diversity jurisdiction is lacking because (1) it is not a citizen of the State of West Virginia and (2) the amount in controversy has not been established to satisfy the requisite jurisdictional amount.   (Pl.'s Mot. at 1.)   The motion has been briefed and is ripe for consideration.

## II.    APPLICABLE LAW

An action may be removed from state court to federal court if it is one over which the district court would have had original jurisdiction.   28 U.S.C. § 1441(a).[4]   This Court has original jurisdiction over all civil actions between citizens of different states where the matter in controversy exceeds the sum or value of $75,000.   28 U.S.C. § 1332(a)(1).   Generally, every defendant must be a citizen of a state different from every plaintiff for complete jurisdiction to exist.   Section 1446 provides the procedure by which a defendant may remove a case to a district court under Section 1441.[5]   Section 1446 requires that, "[a] defendant or defendants desiring to remove any civil action from a State court shall file . . . a notice of removal signed pursuant to Rule 11 of the Federal Rules of Civil Procedure and containing a short and plain statement of the grounds for removal[.]"   28 U.S.C. § 1446(a).   Additionally, a defendant is required to file a notice of removal within thirty days after receipt by the defendant, through service or otherwise, a copy of the initial pleading. 28 U.S.C. § 1446(b)(1).   Moreover, in the newly amended statute,

---

4    Section 1441 states in pertinent part:

> Except as otherwise expressly provided by Act of Congress, any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending.

28 U.S.C. § 1441(a).

5    The Federal Courts Jurisdiction and Venue Clarification Act of 2011, Pub.L. No. 112–63, § 1, 125 Stat. 758 (2011) (the "2011 Act") amended several provisions of Title 28, including Section 1446.

Congress has required that "[w]hen a civil action is removed solely under section 1441(a), all defendants who have been properly joined and served must join in or consent to the removal of the action."  28 U.S.C. § 1446(b)(2)(A).

It is the long-settled principle that the party seeking to adjudicate a matter in federal court, through removal, carries the burden of alleging in its notice of removal and, if challenged, demonstrating the court's jurisdiction over the matter.  *Strawn et al. v. AT &T Mobility, LLC et al.*, 530 F.3d 293, 296 (4th Cir. 2008); *Mulcahey v. Columbia Organic Chems. Co.*, 29 F.3d 148, 151 (4th Cir. 1994) ("The burden of establishing federal jurisdiction is placed upon the party seeking removal.") (citation omitted).   Accordingly, in this case, the Removing Defendants have the burden to show the existence of diversity jurisdiction by a preponderance of the evidence.  *See White v. Chase Bank USA, NA.*, Civil Action No. 2:08-1370, 2009 WL 2762060, at *1 (S.D. W. Va. Aug. 26, 2009) (Faber, J) (citing *McCoy v. Erie Insurance Co.*, 147 F.Supp. 2d 481,488 (S.D. W. Va. 2001)).   In deciding whether to remand, because removal by its nature infringes upon state sovereignty, this Court must "resolve all doubts about the propriety of removal in favor of retained state jurisdiction."  *Hartley v. CSX Transp., Inc.*, 187 F.3d 422, 425 (4th Cir. 1999).

## III.   DISCUSSION

Plaintiff does not question the timeliness of U.S. Bank's removal or the character of the consents provided by the balance of the removing defendants.   However, Plaintiff challenges the invocation of this Court's diversity jurisdiction by contending that it, as a county, is not a citizen of the state of West Virginia and that U.S. Bank has not demonstrated the requisite jurisdictional amount.   The Court will first consider Plaintiff's challenge of Defendant's attempt to satisfy the amount in controversy.

8

Section 1446 provides guidance with respect to a district court's consideration of the requisite amount in controversy for removals based on diversity jurisdiction. Specifically, Section 1446 instructs that

> [i]f removal of a civil action is sought on the basis of the jurisdiction conferred by section 1332(a), the sum demanded in good faith in the initial pleading shall be deemed to be the amount in controversy, except that—
>
> (A) the notice of removal may assert the amount in controversy if the initial pleading seeks—
>
> (i) nonmonetary relief; or
> (ii) a money judgment, but the State practice either does not permit demand for a specific sum or permits recovery of damages in excess of the amount demanded; and
>
> (B) removal of the action is proper on the basis of an amount in controversy asserted under subparagraph (A) if the district court finds, by the preponderance of the evidence, that the amount in controversy exceeds the amount specified in section 1332(a).

28 U.S.C. § 1446(c)(2).   As Section 1446 instructs, generally the "sum claimed by the plaintiff controls" the amount in controversy determination.   *JTH Tax, Inc. v. Frashier*, 624 F.3d 635, 638 (4th Cir. 2010) (citing *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 288 (1938)). However, when the sum certain demand is not specified in the complaint, like in this case, the determination of the amount in controversy "becomes more difficult."   *Bartnikowski v. NVR, Inc*., 307 F.App'x. 730, 734 (4th Cir. 2009) (unpublished decision).   In such a case, the defendant, as the party invoking this Court's jurisdiction, is tasked with presenting evidence that the amount in controversy exceeds $75,000.   The demonstration of the requisite jurisdictional allegation must be by a preponderance of the evidence. Therefore, a defendant may not rely upon conjecture or

9

speculation. *Dent v. Chesapeake Appalachia, LLC*, No.5:12CV53, 2013 WL 461225, *7 (N.D. W. Va. Feb. 5, 2013) (citing *Bartnikowski*, 307 F.App'x. at 737). "To satisfy [its] burden, a defendant must offer more than a bare allegation that the amount in controversy exceeds $75,000. Instead, a defendant seeking removal must 'supply evidence to support [its] claim regarding the amount at issue in the case.'" *Heller v. TriEnergy, Inc.*, No. 2012 WL 2740870, *9 (N.D. W.Va. July 9, 2012) (quoting *Sayre v. Potts*, 32 F.Supp.2d 881, 886 (S.D. W.Va.1999)) (internal citation omitted). To ascertain the amount in controversy, a court may consider the cause of action alleged in the complaint, the notice of removal and other relevant materials or evidence that was available at the time of removal. *Dent*, 2013 WL 461225 at *2.

According to U.S. Bank, inasmuch as Plaintiff seeks a declaration in Count Two that the notes held within their trusts are unsecured debt, Plaintiff desires a determination that will separate a lender's mortgage and security interest from the promissory note. (Notice at 5.) Defendant argues that such a declaration will require the conversion of all of its mortgage notes held in RMBS trusts administered by MERS to be unsecured debt, which necessarily implicates the value of the mortgages on the residential properties. (Notice at 5-6.) In this vein, U.S. Bank and BofA have identified at least two such mortgages with unpaid principal balances that total $293,172.31. (*Id*. at 6-7) (Defendant offers two affidavits in support of this contention: (1) affidavit of Irina Palchuk, Vice President of Global Corporate Trust Services Group, wherein she attests that U.S. Bank holds within its trust a residential mortgage for a property in Wyoming County with an "unpaid balance" of $89,646.71 (Notice of Removal Ex. B (Document 1-2)); and (2) affidavit of Robin Chrostowski, Vice President of Bank of America, N.A., swearing that BofA services a mortgage loan in a RMBS trust for a property located in Wyoming County that has an unpaid

balance of $230,525.60 (Notice of Removal Ex. C (Document 1-3))).    U.S. Bank asserts that the value of these loans alone satisfy the jurisdictional amount.   Next, U.S. Bank contends that the jurisdictional amount is met by Plaintiff's request for exemplary damages.   (*Id.* at 7.)   Using the ratio of 2.55 to 1 as applied in *Patton v. Fifth Third Bank*, U.S. Bank asserts that the amount in controversy as to the exemplary damages of the two identified loans is $747,589.39.   (*Id.*) (citing *Patton v. Fifth Third Bank*, No.Civ.A. 2:05-0790, 2006 WL 771924, at *2-3 (S.D. W. Va. Mar. 24, 2006)).   U.S. Bank also asserts that the amount in controversy is independently met by Plaintiff's request for attorney's fees which can be awarded in an amount which is one-third of a party's recovery.   (*Id.* at 7.)   Given the values of the two identified loans and the award of exemplary damages, U.S. Bank argues that this fee places into controversy an amount over $300,000. (*Id.* at 8.)   Finally, U.S. Bank asks the Court to consider Plaintiff's request to recover actual damages of the recording fees it believes it should have been paid for certain assignment mortgages. Defendants argue that these amounts "will increase the amount in controversy."   (*Id.*)   In support of this contention, Defendant does not offer any evidence of the number of loans held within its trusts or the number of assignments that were made, according to Plaintiff's theory, which did not result in the payment of recordation fees.

The Court has considered the asserted claims by Plaintiff, including its request for declaratory relief, and finds that Defendant has failed to satisfy its burden of demonstrating that the requisite jurisdictional amount can be met in this case.   "[L]ike requests for money damages, requests for injunctive [or declaratory] relief must be valued in determining whether the plaintiff has alleged a sufficient amount in controversy."   *JTH Tax*, 624 F.3d at 639 (citing *Hunt v. Wash. State Apple Adver. Comm'n*, 432 U.S. 333, 347 (1977) ("In actions seeking declaratory or

injunctive relief, it is well established that the amount in controversy is measured by the value of the object of the litigation.")). "In this circuit, it is settled that the test for determining the amount in controversy in a diversity proceeding is 'the pecuniary result to either party which [a] judgment would produce.'" *Dixon v. Edwards*, 290 F.3d 699, 710 -711 (4th Cir. 2002) (quoting *Gov't Employees Ins. Co. v. Lally*, 327 F.2d 568, 569 (4th Cir.1964)).   With this law as context, the Court is not persuaded that the value of the object of this litigation invokes a consideration of the face value of an individual mortgage loan.

In this case, the County Plaintiff is aggrieved that it has been duped out of receiving recordation fees for the transfer of an ownership interest in real estate throughout the securitization process.   As a result of what it believes it is due and owing by law, Plaintiff seeks to obtain its statutory fee for every ownership re-assignment that could have been recorded in its county records based on the conveyances involved in the loan securitization process.   Plaintiff represents, without dispute, that the fee for such recordation is $15 for each transfer.   Consequently, it is immaterial that the mortgage loan is valued at $1.00 or $1,000,000; the recordation fee would be the same for each transaction.   In its request for a declaration that the mechanism by which U.S. Bank and others have established its lending practice and utilized MERS, Plaintiff asserts that the Defendants have established an unsecured debt situation as opposed to a first priority security interest in each of the loans.   Should an award be given in favor of Plaintiff and against Defendant with respect to Count Two—that is, a declaration that what Defendant believed to be a secured debt would be an unsecured debt—the validity or extent of the loan would not be implicated. Instead, the issue would become how a deed of trust beneficiary would collect or enforce its right on a non-performing loan.   Based on the allegations of the Complaint, if a court were to declare

the debt as unsecured, a defendant would risk losing the value, not of the individual mortgage loan, but of the securitized product which it believed contained first priority deeds of trust.  (*See* Compl. ¶¶ 27, 31).   Therefore, the object of the litigation, from the Defendants' perspective, would be the difference between the value of a secured debt verses that of an unsecured debt.   "To place a value on the equitable relief requested based on . . . mortgage loans as secured debt versus their value as unsecured debt might well prove incapable of accurate guesstimation, but if it could be done, it would certainly require expert evaluation, analysis and opinion."  *See County of Washington, Pennsylvania v. U.S. Bank N.A.*, No.11-1405, 2012 WL 3860474, *27 (W.D. Pa. (Aug. 17, 2012) (civil action with complaint substantially similar to that in this case where court granted motion to remand finding that the defendant failed to demonstrate the amount in controversy).   U.S. Bank has not offered evidence of this nature.

Moreover, to view the object of the litigation from the perspective of the Plaintiff, that is to obtain the recordation fees for each real estate ownership interest transfer, the Court would need to know the number of the mortgage loans held within U.S. Bank's RMBS trust for properties in Wyoming County which name MERS as nominee, as well as, the number of assignments that occurred throughout the securitization process between the originating loan and acquisition of the loan in the U.S. Bank's RMBS trust.   (County of Washington, 2012 WL 3860474 at *23).   U.S. Bank has not offered any evidence of these factors and the same is not contained on the face of the complaint, notice of removal or the record of this case.

Given that U.S. Bank's argument establishing this Court's jurisdiction based on the value of two identified residential mortgage loans has been rejected, the balance of its arguments fail. Further, the Court is not in the position to consider the appropriate measurement of punitive

damages or attorney's fees, even if, given the allegations in the record, such fees could be properly asserted and considered to determine the amount in controversy in this case.   Therefore, the Court finds that Defendant has failed to prove by a preponderance of the evidence that the requisite jurisdictional amount can be satisfied in this case. To the extent that Defendant has failed to demonstrate a critical component of diversity jurisdiction, the Court finds that it need not address the parties' arguments relative to the citizenship of Plaintiff Wyoming County.

Finally, Plaintiff moves for an "order requiring the Defendant to pay costs, expenses, and attorney fees incurred by Wyoming County as a result of the removal."   (Memorandum of Law in Support of Wyoming County's Motion to Remand (Document 7) at 18.)   Pursuant to 28 U.S.C. § 1447(c), "[a]n order remanding the case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal." The United States Supreme Court in *Martin v. Franklin Capitol Corp.*, 546 U.S. 132 (2005), has instructed that:

> [T]he standard for awarding fees should turn on the reasonableness of the removal. Absent unusual circumstances, courts may award attorney's fees under [Section] 1447(c) only where the removing party lacked an objectively reasonable basis for seeking removal. Conversely, when an objectively reasonable basis exists, fees should be denied.

(*Martin*, 546 U.S. at 141) (citations omitted).   An award of fees and costs upon a court's determination that a remand is warranted is not automatic.   The Supreme Court in *Martin* foreclosed any such automatic fee-shifting argument when it considered the language used in Section 1447(c).   *See Martin* 546 U.S. at 136-37.   The Supreme Court explained that Section 1447(c) provides "that a remand order 'may' require payment of attorney's fees–not 'shall' or 'should.'" (*Id.* at 136.)   This language clearly indicates that a district court has discretion in awarding attorney fees on remand.   The Court further explained that "[t]he automatic awarding of

14

attorney's fees to the prevailing party would pretermit the exercise of that discretion[]" and that there is "no sound basis" for a presumption in favor of awarding fees. (*Id.*) The Supreme Court has instructed that "the standard for awarding fees should turn on the reasonableness of the removal." (*Id.*) The Court provided an example for the discretion a court should use in determining its departure from the rule,

> [f]or instance, a plaintiff's delay in seeking remand or failure to disclose facts necessary to determine jurisdiction may affect the decision to award attorney fees. When a court exercises its discretion in this manner, however, its reasons for departing from the general rule should be "faithful to the purposes" of awarding fees under [Section] 1447(c).

(*Id*. at 141.) Furthermore, "[t]he ultimate decision as to whether or not fees and costs should be awarded is left to the sound discretion of the district court, and it is not necessary for the Court to find "bad faith" on the part of the removing party before making such awards." *Allen v. Monsanto Company*, 396 F.Supp.2d 728, 733 (S.D. W. Va. 2005) (Chambers, J.) (citing *Watson v. Charleston Hous. Auth.*, 83 F.Supp.2d 709, 712 (S. D. W. Va. 2000) (Haden, J.) "The purpose, instead, is to reimburse a party for the costs associated with responding to an improper removal." (*Id.*) (citations omitted.) After careful consideration of the parties' written submissions and the basis for U.S. Bank's removal, the Court cannot find that Defendant acted in an objectively unreasonable manner. Indeed, Plaintiff failed to proffer any such argument in its Motion (See Memorandum of Law in Support of Wyoming County's Motion to Remand (Document 7) at 18-19.) Therefore, the Court denies Plaintiff's request for attorney fees and costs.

## IV. CONCLUSION

For the reasons stated above, the Court does hereby **ORDER** that *Plaintiff's Motion to Remand* (Document 6) be **GRANTED,** that this action be remanded to the Circuit Court of

15

Wyoming County, and that Plaintiff's request for attorney's fees and costs be **DENIED**.

Further, the Court **DIRECTS** the Clerk to send copies of this Memorandum Opinion and Remand Order to all counsel of record, any unrepresented party, and a certified copy to the Clerk of the Circuit Court of Wyoming County.

ENTER:    February 19, 2013

IRENE C. BERGER
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF WEST VIRGINIA

16